UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DION SCOTT BUCKELEW, BOOKING #19729940,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM D. GORE, DR. JON MONTGOMERY, SAN DIEGO COUNTY BOARD OF SUPERVISORS, PUBLIC DEFENDER PATRICIA VALDOVINOS,<br><br>Defendants. | Case No.: 3:21-cv-00810-DMS-NLS<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2]; and**<br><br>**(2) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) AND 28 U.S.C. § 1915A(b)** |

On April 23, 2021, Dion Scott Buckelew ("Plaintiff" or "Buckelew"), currently incarcerated at the San Diego County Jail ("SDCJ") and proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. ECF No. 1. Plaintiff did not prepay the civil filing fee required by 28 U.S.C. § 1914(a); instead, he filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). ECF No. 2.

/ / /

/ / /

1

**I. Motion to Proceed IFP**

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 85 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 577 U.S. at 85.

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020). The additional $52 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

Plaintiff has submitted a Prison Certificate signed by a SDCJ Accounting Officer attesting as to his monthly balances and deposits. *See* ECF No. 2 at 4; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. The certificate shows Plaintiff had an average monthly deposit of $252.52 to his account, maintained an average balance of $48.89 in his account over the six month period preceding the filing of his current Complaint, and an available balance of $293.35 as of March 30, 2021. *See* ECF No. 2 at 4-6; 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 577 U.S. at 85; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered.").

Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2), and imposes an initial partial filing fee of $50.50 pursuant to § 1915(b)(1). The Court will direct the Watch Commander at SDCJ, or his or her designee, to collect this initial filing fee only if sufficient funds are available in Plaintiff's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 577 U.S. at 86; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered."). The remaining balance of the $350 total fee owed in this case must be collected by the agency having custody of the prisoner and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

/ / /

/ / /

## II. Screening per 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)

### A. Standard of Review

Because Buckelew is a prisoner, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

///

B. Plaintiff's Allegations

In Count One, Buckelew states that on December 16, 2020, he "tested positive for COVID-19 while housed at San Diego County Jail Module 8-C." Compl. at 3. He claims this is a result of inaction by Defendants Sheriff William Gore and the Board of Supervisors, and that the conditions at the jail are "unethical, immoral, inhumane and unconstitutional." *Id.* According to Buckelew, he told his public defender, Defendant Patricia Valdovinos, about the conditions at the jail and his belief that he contracted COVID-19 as a result of those conditions. *Id.* Valdovinos allegedly told Buckelew that "I'm your criminal attorney, not a civil rights attorney." *Id.* In addition, Buckelew alleges that Defendant Dr. John Montgomery "failed to provide proper and adequate health care and treatment," despite the "multiple grievances" Buckelew submitted. *Id.*

In Count Two, Buckelew alleges his First Amendment rights have been violated by Defendants Gore, San Diego Board of Supervisors and Valdovinos. *Id.* at 4. Specifically, he claims he has "requested numerous times to be afforded a chaplain, pastor or clergy that is essential as a Christian and have been denied access since on or about 3-15-20 and ongoing into today." *Id.* According to Buckelew, the policies and procedures implemented at the SDCJ are what led to this violation of his religious rights, and the San Diego Board of Supervisors "should have ensured that this vital necessity was being provided." *Id.* He also contends that he told his public defender, Defendant Valdovinos, about the violations of his First Amendment rights and she "failed to act responsibly and accordingly in preserving my rights." *Id.* Buckelew claims that as a result of being denial access to religious services, he has suffered "exacerbated anxiety, depression, fear and sorrow. . . exacerbated symptoms of multiple sclerosis, . . . severe pain, sever muscle spasms, loss of use of fingers, hands, legs, arms, cognitive abilities and other symptoms and brain functions." *Id.*

In Count Three, Buckelew alleges his Eighth Amendment rights were violated when he was assaulted by other prisoners. *Id.* at 5. He claims that a prisoner was removed from his housing module on August 22, 2020 because he was "inciting racial tensions likely to

result in [a] riot . . . ." *Id.* According to Buckelew, the inmate was returned to Buckelew's housing module on February 7, 2021, and later attacked him, "which left [him] with a possible broken nose and possible broken jaw." *Id.* Buckelew claims he has been seeking medical attention for these injuries but was denied. *Id.* His grievances about this incident have also been denied. *Id.* Buckelew contends Defendant Gore has ignored his grievances, and that the San Diego Board of Supervisors "should have implemented policies and procedures preventing the attack." *Id.* He claims Defendant Valdovinos "denied [his] pleas for help" and "should have acted responsibly and protected [his] health, safety and rights," and that Defendant Montgomery "neglected to train and ensure medical staff in providing necessary, proper and adequate medical care and treatment to a victim of assault." *Id.*

C. 42 U.S.C. § 1983

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

D. Discussion

1. Defendant San Diego County Board of Supervisors

Plaintiff names the San Diego County Board of Supervisors as a Defendant, alleging they "failed to act appropriately" in their role of overseeing the SDCJ where Buckelew contracted COVID-19, failed to ensure he had access to a clergy member, and failed to implement policies and procedures which would have prevented the February 7, 2021 attack. Compl. at 3–5. "[A] local government entity, such as the [San Diego County Board of Supervisors], 'may not be sued under § 1983 for an injury inflicted solely by its

employees or agents.'" *Spengler v. Attorney General Office*, 2018 WL 10498570 at *4 (C.D. Cal. June 20, 2018) (quoting *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).) "To state a section 1983 claim against a government unit, such as [a] County or [a] County Board of Supervisors, the plaintiff must establish an affirmative causal link between a governmental policy or practice and the alleged constitutional violation." *Stemmons v. Arpaio*, 2007 WL 3049073 at *2 (D. Az. Oct. 4, 2007) (citing *City of Canton v. Harris*, 489 U.S. 378, 385–85 (1989); *Monell*, 436 U.S. at 690–95). Buckelew has not plausibly alleged that the San Diego County Board of Supervisors has enacted or implemented any official policy or custom, or any facts to plausibly show a causal link between any county policy or practice and the constitutional violations he alleges. *See id.* Accordingly, all claims against the San Diego Board of Supervisors are dismissed from this action for failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B); § 1915A(b)(1).

### 2. Defendant Patricia Valdovinos

Buckelew names Deputy Public Defender Patricia Valdovinos, who was appointed to represent him in his criminal case, as a Defendant and alleges she violated his First, Eighth, and Fourteenth Amendment rights. Compl. at 3–5. He claims Valdovinos "failed to act responsibly and accordingly in preserving [his] rights" when he told her he was being denied his First Amendment right to practice his religion. *Id.* at 4. He further claims that when he told Valdovinos about the unsanitary conditions in the jail which resulted in him testing positive for COVID-19, she told him she was not his civil rights attorney. *Id.* at 3. According to Buckelew, the unsanitary conditions violated his Eighth Amendment rights and Valdovinos "failed to protect [him] and [his] rights." Buckelew also alleges Valdovinos "should have acted responsibly and protected my health, safety and rights as a pretrial detainee not convicted of any crime" when he told her about the February 2021 attack. *Id.* at 5.

Buckelew fails to state a claim against Valdovinos upon which § 1983 relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b)(1). "[A] public defender

does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Miranda v. Clark County, Nevada*, 319 F.3d 465, 468 (9th Cir. 2003) ("[The public defender] was, no doubt, paid by government funds and hired by a government agency. Nevertheless, [her] function was to represent [her] client, not the interests of the state or county."); *Garnier v. Clarke*, 332 Fed. App'x 416 (9th Cir. 2009) (affirming district court's sua sponte dismissal of prisoner's § 1983 claims against appointed counsel). Thus, all claims against Defendant Valdovinos are dismissed from this action for failing to state a claim upon which relief may be granted.

### 3. Count One

In Count One, Buckelew alleges that his Eighth Amendment right to medical care and to be free from cruel and unusual punishments was violated when he was subjected to unsanitary conditions which resulted in him contracting COVID-19. Compl. at 3. He contends that Defendant Gore violated his Eighth Amendment rights because he was "house[d] at San Diego Central Jail Module 8-C [and] under the care and custody of Sheriff William D. Gore" when he contracted the virus, that "approximately sixty (60) prisoners contracted the deadly virus in Module 8-C [and] over eleven hundred (1100) prisoners contracted the deadly virus within the five (5) detention facilities overseen by . . . Sheriff William D. Gore." *Id*. He also claims that Defendant Montgomery "failed to provide proper and adequate health care and treatment" despite the multiple grievances he filed. *Id.*

Count two is best understood as a claim that Gore failed to protect him against contracting the COVID-19 virus. Because Buckelew is a pretrial detainee, however, the claim must be analyzed under the Fourteenth Amendment, not the Eighth. *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). The Ninth Circuit has described the elements of the inquiry as follows:

> (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;

///

(2) those conditions put the plaintiff at substantial risk of suffering serious harm;

(3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and

(4) by not taking such measures, the defendant caused the plaintiff's injuries [footnote omitted].

*Id.* at 1071.

When evaluating the third element, "the defendant's conduct must be objectively unreasonable . . . ." *Id.*

Buckelew's allegations are insufficient to lead the Court to reasonably infer a plausible constitutional claim as to either Gore or Montgomery because he has not made any specific allegations as to how either Defendant's actions violated his constitutional rights. *Iqbal*, 556 U.S. at 676; *Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983). "A plaintiff must allege facts, not simply conclusions, t[o] show that [each defendant] was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see also Estate of Brooks ex rel. Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999) (stating that "[c]ausation is, of course, a required element of a § 1983 claim.") Here, Buckelew's claims that many prisoners contracted COVID-19 in facilities overseen by Gore and his claims that Montgomery failed to provide adequate health care are "simply conclusions" without any factual specificity. *Iqbal*, 556 U.S. at 676.

Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 662 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 570). Plaintiff's Complaint does not contain sufficient factual allegations that Gore and

Montgomery, personally and through their own actions, violated Plaintiff's constitutional rights. *Id.*

### 4. Count Two

In Count Two, Buckelew alleges Gore has implemented written policies and procedures which have denied him access to "a chaplain, pastor or clergy that is essential as a Christian" in violation of his First Amendment rights. Compl. at 4. He claims that "without the required religious services being provided to ensure my place in the Kingdom of God, I am subject to being condemned and sent to Hell . . . ." *Id.* He is suing Gore in both his official and individual capacity. *Id.*

The First Amendment bars the government from, among other things, "making a law prohibiting the free exercise of religion." *Hartmann v. Cal. Dep't Corrs. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). Although Buckelew does not specifically invoke it, the Court liberally construes his Complaint as attempting to state claims under both the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA). *See* 42 U.S.C. § 2000cc-1(a); *see also Alvarez v. Hill*, 518 F.3d 1152, 1157-58 (9th Cir. 2008) (noting that a prisoner need not identify RLUIPA as a cause of action in order to state a claim based upon that law). Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability" absent a showing that the burden imposed is "in furtherance of a compelling government interest" and "is the least restrictive means of furthering . . . that interest." 42 U.S.C. § 2000cc-1(a); *see also Khatib v. County of Orange*, 639 F.3d 898, 904–05 (9th Cir. 2011) (concluding that RLUIPA applies to county jail facilities). "RLUIPA provides more 'expansive protection' for inmates' 'religious liberty' than the First Amendment." *Phillips v. County of Riverside*, 2020 WL 6203574 (C.D. Cal. Oct. 22, 2020) (citing *Holt v. Hobbs*, 574 U.S. 352, 358 (2015) and *Shakur v. Shiriro*, 514 F.3d 878, 888 (9th Cir. 2008).)

In order to state a First Amendment free exercise claim, Plaintiff must "show that the government action in question substantially burdens the person's practice of [their]

religion." *Jones v. Williams*, 791 F.3d 1023, 1031–32 (9th Cir. 2015) (internal citations, quotation marks, and alterations omitted). *Jones* defines "substantial burden" as one which "places more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressures on an adherent to modify his behavior and to violate his beliefs." *Id.* Similarly, the Ninth Circuit has explained that a "'substantial burden'" sufficient to state a RLUIPA claim is a "'significantly great restriction or onus upon [religious] exercise.'" *Hartmann*, 707 F.3d at 1124–25 (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1039 (9th Cir. 2004). In the context of a prisoner's constitutional challenge to institutional policies, . . . a substantial burden occurs 'where the state . . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id.* (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (alteration in original) (quotation omitted).)

Here, Buckelew claims that Gore has implemented policies which completely deny him access to clergy and religious services. Compl. at 4; *see Hartmann*, 707 F.3d at 1124–25. He also alleges the denial of access to clergy and religious services result in him violating his religious beliefs and "subject [him] to being condemned to hell." *Jones*, 791 F.3d at 1031–32. Compl. at 4. These allegations are sufficient to allege plausible free exercise and RLUIPA claims against Defendant Gore sufficient to surpass the "low threshold" set for sua sponte screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Iqbal*, 556 U.S. at 678; *Wilhelm*, 680 F.3d at 1123.

### 5. Count Three

In Count Three, Buckelew claims his Eighth Amendment rights were violated by Defendants Gore and Montgomery. Compl. at 5. As to Gore, Buckelew claims that he was physically assaulted by "at least three other prisoners" on February 7, 2021 and suffered "a possible broken nose and possible broken jaw." *Id.* He alleges that the "main instigator of the attack was removed from the housing module on 8-22-20 for inciting racial tensions"

///

and "was then placed back into the house module 8-C on 2-7-21." *Id.* Buckelew contends Gore "should have implemented polices and procedures preventing the attack . . . ." *Id.*

As this Court has noted, because Buckelew is a pretrial detainee, his claim must be analyzed under the Fourteenth Amendment and Buckelew must show the defendant made an intentional decision to put the plaintiff at substantial risk of suffering serious harm, the defendant's conduct was objectively unreasonable and caused the plaintiff's injuries. *Castro*, 833 F.3d at 1071. Buckelew's allegations fall short of this standard because they are vague and conclusory. "Even though a court must construe the pleadings of a pro se plaintiff liberally in a civil rights case, a plaintiff must still allege facts with some specificity as to the actions taken by each defendant to violate his rights." *Jones v. United States*, No. CV 11-2242-DOC (SP), 2019 WL 1301788, at *11 (C.D. Cal. Feb. 25, 2019), report and recommendation adopted, No. CV 11-2242-DOC (SP), 2019 WL 1298971 (C.D. Cal. Mar. 21, 2019), *appeal dismissed sub nom. Jones v. Woodring*, No. 19-55623, 2019 WL 6337446 (9th Cir. Sept. 13, 2019). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Wood v. Yordy*, 753 F.3d 899, 904–05 (9th Cir. 2014); *see also Jones*, 733 F.2d at 649. "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *Jones*, 733 F.2d at 649 (internal quotations omitted). Buckelew's assertion that Gore "should have implemented polices and procedures preventing the attack" does not plausibly allege that Gore put him at substantial risk of harm or that his actions were objectively unreasonable. *Gordon*, 888 F.3d at 125; *Iqbal*, 556 U.S. at 678. Because Buckelew offers only a "'naked assertion' devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557), his allegations against Gore with respect to the February 7, 2021 attack are insufficient to "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570); *see also* 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b)(1); *Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

/ / /

Buckelew also alleges that he has "requested medical care and treatment for [his] injuries and [has been] denied." Compl. at 5. He claims that Defendant Montgomery "neglected to train and ensure medical staff in providing necessary, proper and adequate medical care and treatment to a victim of assault." *Id*. Buckelew's allegations against Montgomery are similarly vague and conclusory and do not state an Fourteenth Amendment claim because they do not plausibly allege what Montgomery actually did and how his actions put Buckelew at substantial risk of suffering serious harm. *Gordon*, 888 F.3d at 1125. Nor do they plausibly allege what "reasonabl[y] available measures" Montgomery did not take "to abate that risk," how he caused injury to Buckelew, and how Montgomery's actions were "objectively unreasonable." *Id.* As with his allegations against Gore, Buckelew's "'naked assertion[s]' devoid of 'further factual enhancement,'" are insufficient to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570, 557); *see also* 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b)(1); *Lopez*, 203 F.3d at 1126–27; *Rhodes*, 621 F.3d at 1004.

    E.    <u>Leave to Amend</u>

Because the Court has determined that some of Plaintiff's claims survive the sua sponte screening process, the Court will give Plaintiff the opportunity to either: (1) notify the Court of his intent to proceed with his First Amendment and RLUIPA claims against Defendant Gore only; or (2) file an amended pleading correcting all the deficiencies of pleading identified by the Court in this Order. Plaintiff must choose one of these options within sixty (60) days from the date this Order is filed. If Plaintiff chooses to proceed as to his claims against Gore, or does not respond to this Order, the Court will issue an Order directing the U.S. Marshal to effect service of his Complaint on Defendant Gore and dismiss the remaining claims and defendants.

**III.    Conclusion and Order**

For the reasons explained, the Court:

1)    **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

13

2) **DIRECTS** the Watch Commander of the SDCJ, or his designee, to collect from Buckelew's inmate trust account the $50.50 initial filing fee assessed in this Order if those fees are available in Plaintiff's account and to thereafter garnish whatever remains of the $350 filing fee owed in this case by garnishing monthly payments in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3) **DIRECTS** the Clerk of the Court to serve a copy of this Order on Watch Commander, San Diego Central Jail, 1173 Front Street, San Diego, California, 92101.

4) **DISMISSES** all of Plaintiff's claims against Defendants San Diego County Board of Supervisors and Patricia Valdovinos for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A(b);

5) **DISMISSES** Plaintiff's Eighth Amendment claims against Defendants Gore and Montgomery for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii) and 28 U.S.C. § 1915A(b)(1); and

6) **GRANTS** Plaintiff sixty (60) days leave from the date of this Order in which to either: (1) Notify the Court of the intention to proceed with the First Amendment and RLUIPA claims against Gore only; or (2) File an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete in itself without reference to his original pleading. Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived. See S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey*, 693 F.3d at 928 (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled."). If Plaintiff chooses to proceed as to his claims against Gore, or does not respond to this Order, the Court will issue an Order directing the

///

14

U.S. Marshal to effect service of his Complaint on Defendant Gore and dismiss the remaining claims and defendants.

**IT IS SO ORDERED**.

Dated: June 22, 2021

_____
Hon. Dana M. Sabraw, Chief Judge
United States District Court